IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| BILLY FREDERICK ALLEN, | § | |
| TDCJ #366613, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-02-3132 |
| | § | |
| JOHNNY THOMAS, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER

State inmate Billy Frederick Allen filed a complaint under 42 U.S.C. § 1983, alleging violations of his civil rights in connection with the confiscation of certain items of his personal property from his prison cell.  Pending before the Court is a joint motion for summary judgment by the defendants. (Docket Entry No. 59).  Allen has filed a response, to which the defendants have submitted a reply.  (Docket Entry Nos. 65, 67).  After considering all of the pleadings, the summary judgment evidence, and the applicable law, the defendants' motion for summary judgment is granted and this case is dismissed for reasons set forth below.

## I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Allen is presently incarcerated in the Texas Department of Criminal Justice - Correctional Institutions Division (collectively, "TDCJ").  The complaint in this case stems from an incident that occurred at the Wynne Unit on November 13, 2000, where Allen was

assigned at the time.  Allen sues Johnny M. Thomas, who was a building security major at the Wynne Unit during the events giving rise to this lawsuit.  Allen also sues a correctional officer, Ronnie Major, and the Wynne Unit property officer, Robert Dickey.

Allen complains that Major confiscated his typewriter and a radio, at Thomas' direction, and placed the property in Dickey's custody.  According to the current complaint, Allen used a typewriter that he had purchased at a prison commissary to compose, print, and distribute letters to three Texas newspapers during the weekend of November 11 and 12, 2000.[1]  (Docket Entry No. 53, *Amended Complaint* ¶ 7).  The letters expressed Allen's criticism of the Texas mandatory supervision statute and its application by parole officials to inmates serving life sentences in TDCJ.[2]  (*See* Docket Entry No. 1, Exhibit 1, *Letter to Leona Allen of the Dallas Morning News*).  On November 13, 2000, the day after Allen sent his letters to the Wynne Unit mailroom, Thomas reportedly ordered Major to seize Allen's typewriter.  (Docket Entry No. 53, *Amended Complaint* ¶ 9). Because his

---

[1]     Allen characterizes the typewriter in his pleadings as a "word processor," because it apparently had some memory capability akin to a computer and required an electric outlet. The property receipt that Allen presents shows that it was a Smith Corona PWP 2500 "typewriter." (Docket Entry No. 1, Exhibit 2, *Property Registration Receipt*).  To avoid confusion, the Court will refer to the item as a typewriter. The typewriter, seized in November 2000, was destroyed in March 2004, pursuant to TDCJ policy, after ample notice to plaintiff. It was destroyed because Allen failed or refused to give the property officer instructions about where to send it.

[2]     The record shows that, on November 13, 2000, the following "media" letters were sent by Allen to Jennifer Autry of the *Fort Worth Star Telegram*, to Leona Allen of the *Dallas Morning News*, and to Thom Marshall of the *Houston Chronicle*.  (Docket Entry No. 65, Exhibit B, *Outgoing Legal, Special, and Media Mail Log*).  A fourth letter, designated as "legal" correspondence, was sent by Allen to attorney Gary Corley in Sherman, Texas. (*Id.*).

typewriter was confiscated one day after he mailed his letters to the media, Allen believed that employees at the Wynne Unit mailroom informed Thomas of the contents of his letters and that this is the reason his typewriter was taken.  (Docket Entry No. 53, *Amended Complaint* ¶ 8).

At the time that Allen's property was seized, Thomas reportedly explained that "an informant" had told him that the typewriter's circuit board had been altered or "souped up with bells and whistles" from its original condition.  (Docket Entry No. 53, *Amended Complaint* ¶ 10).  The radio was confiscated from Allen's cell because it no longer had its original electrical power cord.  (*Id.*).  The items purportedly were seized pursuant to TDCJ Administrative Directive 3.72 ("AD 3.72"), which governs confiscation of personal property belonging to offenders and disposal of "contraband."  (Docket Entry No. 65, Exhibit D [AD 3.72], *Guidelines for TDCJ Offender Personal Property and Confiscation and Disposal of Contraband*).  Under AD 3.72, "authorized property" can be confiscated as "nuisance contraband" if it has been "altered" from its original state.  (*Id.*).  Allen immediately complained about the confiscation of his property.  Although he apparently concedes that the radio had been altered, Allen maintains that his typewriter had not been changed from its original condition.  (Docket Entry No. 1, Exhibit 3, *Step 2 Grievance*).

Allen complains that he was not given a timely receipt (a "Form AD-92") in compliance with AD 3.72 to document the confiscation of his property.  Because he was not given a receipt in a prompt manner, he contends that he was denied a fair hearing to

contest the seizure of his typewriter and radio, and that his property was taken in violation of his right to procedural due process.   Allen complains further that the defendants confiscated his property in retaliation for exercising his First Amendment rights.   Allen also lodges a state law claim for conversion of the property that he deems to have been wrongfully taken.   Allen seeks compensatory damages of $350.00.   Allen also seeks exemplary damages in the amount of $50,000.00 from Thomas, $1.00 each from Major and Dickey, as well as interest, costs of court, and attorneys' fees.

The Court granted summary judgment in the defendants' favor previously and dismissed this case in a Memorandum and Order dated October 23, 2003.  (Docket Entry No. 32).  The Fifth Circuit affirmed the judgment, in part, but vacated portions of the order addressing Allen's contention that his property was taken in violation of due process and in retaliation for exercising his First Amendment rights.  *See Allen v. Thomas*, 338 F.3d 147 (5th Cir. 2004).  His due process and retaliation claims were remanded for additional consideration.  The Court appointed counsel for Allen so that he could conduct discovery regarding his allegation that  mailroom personnel at the Wynne Unit informed Thomas about the contents of Allen's letters, thereby causing the confiscation of his typewriter in retaliation for his contact with the media.

Now that discovery has been completed, the defendants have filed a joint motion for summary judgment, arguing that Allen's due process and retaliation claims fail as a matter of law.  The defendants argue further that they are entitled to qualified immunity from suit.

Allen maintains that disputed fact issues require a trial. The parties' contentions are addressed below under the governing standards of review.

## II.   STANDARDS OF REVIEW

The defendants' motion for summary judgment is governed by Rule 56 of the Federal Rules of Civil Procedure. Under Rule 56, a court must determine whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). A movant's burden is to point out the absence of evidence supporting the nonmovant's case. *See Malacara v. Garber*, 353 F.3d 393, 404 (5th Cir. 2003) (citations omitted) citing *Celotex*, 477 U.S. at 323; and *Stults v. Conoco, Inc.*, 76 F.3d 651, 656 (5th Cir. 1996)). To survive summary judgment, the nonmovant must submit or identify evidence in the record to show the existence of a genuine issue of material fact as to each element of the cause of action. *Malacara*, 353 F.3d at 404 (citing *Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343, 349 (5th Cir. 2001)).

A material fact is one that "might affect the outcome of the suit under the governing law," and a "dispute about a material fact is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Genesis Ins. Co. v. Wausau Ins. Co.*, 343 F.3d 733, 735 (5th Cir. 2003) (citing *Sulzer Carbomedics, Inc. v.*

*Oregon Cardio-Devices, Inc.*, 257 F.3d 449, 456 (5th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "In determining whether summary judgment is appropriate, all the evidence introduced and all of the factual inferences from the evidence are viewed in a light most favorable to the party opposing the motion and all reasonable doubts about the facts should be resolved in favor of the nonmoving party." *Terrebonne Parish Sch. Bd. v. Mobil Oil Corp.*, 310 F.3d 870, 877 (5th Cir. 2002). A reviewing court may not "step into the stead of the jury and weigh the evidence in a search for truth, but is instead to determine whether there exists a genuine issue for trial." *Fabela v. Socorro Indep. Sch. Dist.*, 329 F.3d 409, 414 (5th Cir. 2003); *see also Caboni v. General Motors Corp.*, 278 F.3d 448, 451 (5th Cir. 2002) (stating that in deciding whether summary judgment was properly granted, "this court will not weigh the evidence or evaluate the credibility of witnesses.").

The nonmovant's burden is not met by mere reliance on the allegations or denials in the nonmovant's pleadings. *See Morris v. Covan Worldwide Moving, Inc.,* 144 F.3d 377, 380 (5th Cir. 1998); *see also Johnston v. City of Houston*, 14 F.3d 1056, 1060 (5th Cir. 1994) ("Unsworn pleadings, memoranda or the like are not, of course, competent summary judgment evidence."). Likewise, vague and conclusory assertions cannot defeat a properly supported motion for summary judgment. *See Bridgmon v. Array Sys. Corp.*, 325 F.3d 572, 577 (5th Cir. 2003). The Fifth Circuit has emphasized that the non-moving party does not demonstrate the existence of a genuine issue of fact (and does not thereby avoid

summary judgment) by asserting "some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (citations and internal quotation marks omitted); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (explaining that "conclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy the nonmovant's burden" at the summary judgment stage).  In the absence of proof, a reviewing court will not assume that the nonmovant could or would prove the necessary facts.  *See McCallum Highlands, Ltd. v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995), *revised on other grounds upon denial of reh'g*, 70 F.3d 26 (5th Cir. 1995).

In addition, because the plaintiff is an inmate who proceeds *in forma pauperis*, this case is governed by the Prison Litigation Reform Act (the "PLRA").  Under the PLRA, the reviewing court "shall dismiss the case at any time" if it determines that: (1) the action is frivolous or malicious; (2) the plaintiff fails to state a claim on which relief may be granted; or (3) the plaintiff seeks monetary relief against a defendant who is immune from such relief.  28 U.S.C. § 1915(e)(2)(B).  A complaint "may be dismissed as frivolous if it lacks an arguable basis in law or fact."  *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997).  A review for failure to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard used to review a dismissal pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  *See Newsome v. EEOC*, 301 F.3d 227, 231 (5th Cir.) (citing *Moore v. Carwell*,

7

168 F.3d 234, 236 (5th Cir. 1999) (citation omitted)), *cert. denied*, 537 U.S. 1049 (2002).

Under that standard, courts must assume that the plaintiff's factual allegations are true, and

a dismissal is proper only if it appears that no relief could be granted under any set of facts

that could be proven consistent with the allegations. *See id*. (citations omitted).

### III.   DISCUSSION

The defendants argue that they are entitled to summary judgment dismissing Allen's

claims on the merits because he has failed to establish that their actions violated a

constitutional right.  The defendants argue secondarily that they also are entitled to qualified

immunity from each of Allen's claims.

The Court first addresses the summary judgment motion issues about the merits of

the constitutional claims that Allen asserts.  The Court also analyzes the second prong of

the qualified immunity standard to determine whether the defendants' "actions were

objectively reasonable" in light of "law which was clearly established at the time of the

disputed action." *Collins,* 382 F.3d at 537.

#### A.   Due Process

Allen alleges that his typewriter and radio were taken by the defendants pursuant to

prison regulation AD 3.72 without the requisite level of due procedural process.  The

defendants point out that Allen received notice of the reason his property was confiscated

and that he had an opportunity to be heard when he availed himself of the prison grievance

process.  Thus, the defendants move for summary judgment on this claim, arguing that Allen

received the minimum amount of due process that was constitutionally required under the circumstances.[3]

The Fourteenth Amendment Due Process Clause guarantees that life, liberty, or property may not be taken by the government without due process of law. U.S. CONST. amend. XIV, § 1.  Where a protected interest is present, the government may effect a deprivation only after it has accorded due process.  *Wilkinson v. Austin*, — U.S. —, 125 S. Ct. 2384, 2395 (2005).  At a minimum, due process requires that any deprivation of a protected interest "be preceded by notice and opportunity for hearing appropriate to the nature of the case."  *Mullane v. Central Hanover Bank & Trust Co*., 339 U.S. 306, 313 (1950).  "It is equally fundamental that the right to notice and an opportunity to be heard 'must be granted at a meaningful time and in a meaningful manner.'" *Fuentes v. Shevin*, 407 U.S. 67, 80 (1972) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)).

The defendants maintain that Allen had ample notice and opportunity to object to the confiscation in an effort to secure his property's return.  According to the complaint, Allen confronted Thomas on November 14, 2000, one day after his property was seized, and argued that the items taken were not contraband.  (Docket Entry No. 53, *Amended Complaint* ¶ 10). On November 20, 2000, Thomas informed Allen that he had determined

---

[3]     Allen appears to challenge the defendants' implementation of the policy regarding contraband. Allen's arguments are essentially that taking away ***his*** property was unconstitutional, even if the policy against contraband is proper.  It is unclear if he challenges the policy "on its face." The parties do not address this distinction.  The Court thus does not address any potential issues that this distinction may present.

that the property fit within the definition of contraband found in AD 3.72.  (*Id.* at ¶ 11).

Allen then pursued the matter through the two-step prison grievance process.[4]  Although his

Step 1 grievance does not appear in the record, Allen reportedly initiated the grievance

process on November 30, 2000, whereupon his complaint was reviewed by the unit warden.

After the warden denied Allen's Step 1 grievance, Allen appealed the decision by filing a

Step 2 grievance on January 15, 2001.  (Docket Entry No. 1, Exhibit 3, *Step 2 Grievance*).

A prison administrator rejected Allen's contention that the items taken were not contraband

and denied his Step 2 grievance on May 4, 2001.[5]  (*Id.*).

Allen objects that prison officials failed to provide him with a receipt (a "Form AD-

92") to document the confiscation of his property until March 1, 2002, well after he had

already completed the prison grievance process.  Allen contends that this failure to provide

a prompt receipt resulted in the denial of adequate notice and a fair hearing.  Specifically,

Allen complains that the failure to provide him with a receipt within a reasonable period

---

[4]    The Texas prison system has developed a two-part formal grievance process, both steps of
which must be completed before a prisoner's administrative remedies are considered
exhausted.  *See Johnson v. Johnson*, 385 F.3d 503, 515 (5th Cir. 2004); *Wright v.
Hollingsworth*, 260 F.3d 357, 358 (5th Cir. 2001).  The Step 1 grievance, which must be filed
within fifteen days of the complained-of incident, is handled within the prisoner's facility.  *See
Johnson*, 358 F.3d at 515.  After an adverse decision at Step 1, the prisoner has ten days to file
a Step 2 grievance, which is handled at the state level.  *See id.*; *see also Wendell v. Asher*, 162
F.3d 887, 891 (5th Cir. 1998) (outlining the TDCJ grievance process in more detail).

[5]    After Thomas left the Wynne Unit in 2001 to work at another TDCJ facility, the record shows
that Allen complained further by submitting a formal I-60 Inmate Request, which is not in the
record, as well as sending letters to another officer in authority at the Wynne Unit (Major
Bone), and to the warden in charge of the Wynne Unit (Warden Fernauld), seeking the return
of his property.  (Docket Entry No. 1, Exhibit 4, *Letters to Major Bone and to Warden
Fernauld*).

after the seizure "obstructed or extinguished [his] right to a post-deprivation hearing before an impartial tribunal for the purpose of calling witnesses or otherwise demonstrating that" the confiscated property was not contraband. (Docket Entry No. 53, *Amended Complaint* ¶ 20). Allen's contentions that he was denied a timely receipt and a formal evidentiary hearing in violation of his right to due process are addressed below.

### 1. Untimely Receipt

Allen notes that his property was seized on November 13, 2000, but that he did not receive a receipt until March 1, 2002. (Docket Entry No. 65, Exhibit C [Form AD-92], *TDCJ Confiscation and Disposition of Contraband*). Allen points to AD 3.72, which requires prison officials to provide a receipt to all prisoners whose property is seized to document the confiscation. (Docket Entry No. 65, Exhibit D [AD 3.72], *Guidelines for TDCJ Offender Personal Property and Confiscation and Disposal of Contraband*). Allen argues that the denial of a timely receipt in compliance with AD 3.72 constitutes a violation of due process.

An allegation that the defendants failed to comply with a prison policy, standing alone, does not establish a constitutional violation. *See Jackson v. Cain*, 864 F.2d 1235, 1251-52 (5th Cir. 1989). Here, Allen argues that the failure to receive a timely receipt deprived him of a meaningful opportunity to challenge the confiscation of his property. A review of the one-page receipt shows, however, that it includes no new information about the confiscation that was unknown to Allen previously. (Docket Entry No. 65, Exhibit C

[Form AD-92], *TDCJ Confiscation and Disposition of Contraband*).  At most, the receipt alerts Allen that his radio was seized because it had been altered with an "added extra long power cord," and that a "transformer" on his typewriter had been changed. (*Id.*).  According to his own complaint and the grievance filed by Allen immediately after his property was seized, Allen was already aware of these details.  (Docket Entry No. 1, Exhibit 3, *Step 2 Grievance*).  Moreover, although Allen complains that the late receipt denied him the opportunity to call witnesses or present his case at a hearing, he does not allege or show who these witnesses were, what they would have said, or how the untimely nature of the receipt prevented him from obtaining this information.  Thus, Allen fails to raise a genuine issue of material fact that he suffered a constitutional deprivation because he was denied sufficient notice or an opportunity to be heard in connection with the lateness of the receipt or that its untimely issuance caused a denial of due process.

## 2.   Lack of a Formal Evidentiary Hearing

Allen contends further that the Defendants denied him procedural due process in that he did not have a meaningful opportunity to object to the seizure of his property because he was not accorded a formal evidentiary hearing after being deprived of his property.  The defendants explain that a formal hearing was not held because Allen was not charged with a disciplinary violation for possession of contraband.  The defendants argue that Allen was afforded an opportunity to be heard during the prison administrative grievance process.  The defendants argue that requiring an additional evidentiary proceeding with live witnesses, as

Allen apparently seeks, in connection with the seizure of every contraband item from an inmate would be unreasonable in the prison environment and is not required by due process.

"[D]ue process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972).  The necessary amount and kind of process depends upon an analysis of three factors:  (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the state's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).  By weighing these factors, courts can determine whether a state has met the fundamental requirements of due process by affording an opportunity to be heard at a meaningful time and in a meaningful manner. *City of Los Angeles v. David*, 538 U.S. 715, 717 (2003) (per curiam) (citing *Mathews*, 424 U.S. at 333).  These factors are addressed in turn below to determine whether an adversarial hearing was required in Allen's case as to either his typewriter or radio.

**Private interest**. — Allen points out that prison regulation AD 3.72 permits offenders to possess personal property in the form of a portable radio and a typewriter. (Docket Entry No. 65, Exhibit D [AD 3.72], *Guidelines for TDCJ Offender Personal Property and Confiscation and Disposal of Contraband*).  He notes further that, where

13

inmates are afforded the opportunity to possess property, "whether by 'right' or 'privilege,' to possess personal property, they enjoy a protected interest in that property that cannot be infringed without due process." *McCrae v. Hankins*, 720 F.2d 863, 869 (5th Cir. 1983) (citing *Parratt v. Taylor*, 451 U.S. 527, 536 (1986)). Because he used his typewriter to exercise his First Amendment rights, Allen argues that he had a substantial private interest in that item of property.

Courts in this circuit have rejected the argument that access to a typewriter is essential to the exercise of First Amendment rights.[6] *See Sprouse v. Moore*, 476 F.2d 995, 996 (5th Cir. 1974) (per curiam) (holding that "an inmate has no federally protected right to use typewriters for correspondence, whether personal or legal") (quoting *Stubblefield v. Henderson*, 475 F.2d 26 (5th Cir. 1973)); *Eisenhardt v. Britton*, 478 F.2d 855, 855 (5th Cir. 1973) (holding that the availability of a typewriter is not necessary to access the courts); *Brinson v. McKeeman*, 992 F. Supp. 897, 910 (W.D. Tex. 1997) (noting same); *see also Taylor v. Coughlin*, 29 F.3d 39, 40 (2d Cir. 1994) (acknowledging that there is "no constitutional right to a typewriter as an incident to the right of access to the courts"); *Sands v. Lewis*, 886 F.2d 1166, 1171 (9th Cir. 1986) (same); *Roberts v. Cohn*, 215 F.3d 1330, 2000 WL 622881, *1 (7th Cir. 2000) (unpublished table opinion) (noting that "prisoners do

---

[6]    In his original complaint, Allen argued that the seizure of his typewriter infringed upon his First Amendment rights. The Court granted summary judgment on this claim previously in the Memorandum and Order dated October 23, 2003. (Docket Entry No. 32). The Fifth Circuit affirmed that decision. *See Allen v. Thomas*, 338 F.3d 147 (5th Cir. 2004).

14

not have a constitutional right to a typewriter").   Thus, the fact that the defendants confiscated Allen's typewriter does not violate his First Amendment rights.[7]

Further, even if the typewriter was not altered, and the defendants were mistaken as to its contraband status, Allen's right to a typewriter *per se* is weak.  The same result obtains with respect to Allen's radio.  "Prison officials may obviously impose reasonable restrictions on the type and amount of personal property inmates are allowed to possess in prison[.]" *McCrae*, 720 F.2d at 869 (citing *Sullivan v. Ford*, 609 F.2d 197 (5th Cir. 1980)). Because of the limitations that necessarily attend incarceration following a criminal conviction, Allen's right to this property (even assuming that it was not altered) is not a strong one.  To the extent that Allen's belongings were altered, his right to possess the property is even more attenuated.  Even assuming that prisoners have a protected interest in certain kinds of personal property, Allen cites no authority, and the Court's research does not disclose any, supporting a protected interest in the possession of property that has been altered from its original condition, which TDCJ defines as "contraband," while in prison. *See, e.g., Lyon v. Farrier*, 730 F.2d 525, 527 (8th Cir. 1984) ("Because the property was contraband, [the inmate] cannot seriously argue that he had a protected property interest in it.").  Thus, Allen's property right to possess the typewriter and radio, if altered and therefore contraband, is weak if the right exists at all.

---

[7]     The confiscation evidently has not frustrated his ability to lodge a grievance or his access to the courts.  Although Allen's typewriter was confiscated, his grievances and letters contesting its taking, as well as all of his *pro se* pleadings in this case, are neatly typewritten.

**Risk of Erroneous Deprivation and Probable Value of Additional Procedural Safeguards.** — The Supreme Court has noted that, whatever private interest is at stake, it must be evaluated within the context of the prison system and its attendant curtailment of liberties." *Austin*, 125 S. Ct. at 2395.  The second *Mathews v. Eldridge* factor, addressing the risk of an erroneous deprivation and the procedures in place.  The Court also must consider the probable value, if any, of additional or alternative procedural safeguards. *See id.* at 2395-96.  The defendants note that Allen was provided with notice of the factual basis underlying the confiscation of his property and an opportunity to rebut the reason given during the two-level administrative grievance process.  In that respect, after Allen's initial challenge to the confiscation of his property was unsuccessful at Step 1 of the grievance process, he had an opportunity to appeal that decision at Step 2, and he did so.  (Docket Entry No. 1, Exhibit 3, *Step 2 Grievance*).  Procedural due process cases decided by the Supreme Court have consistently observed that notice and a fair opportunity for rebuttal "are among the most important procedural mechanisms for purposes of avoiding erroneous deprivations." *Austin*, 125 S. Ct. at 2396 (citing *Greenholtz v. Inmates of Neb. Penal and Correctional Complex*, 442 U.S. 1, 15 (1979); *Cleveland Bd. of Ed. v. Loudermill*, 470 U.S. 532, 543 (1985); *Fuentes v. Shevin*, 407 U.S. 67, 80 (1972)).

Allen does not establish that there is a serious risk of erroneous deprivation from the process afforded to him in this case, and he does not demonstrate the value of his proposed additional safeguard, *i.e.*, a live evidentiary hearing prior to or in connection with the seizure

of contraband of a nuisance or non-dangerous nature.  Allen appears to concede that his confiscated radio had been altered because its damaged electrical power cord was replaced. (Docket Entry No. 1, Exhibit 3, *Step 2 Grievance*).  Allen has insisted, however, that his typewriter was not altered in any way and thus his property was not contraband.  (*Id.*). Allen maintains that the risk of erroneous deprivation is high absent a formal (*i.e.*, live evidentiary) hearing, at least in connection with the seizure of typewriters, because correctional officers do not possess the necessary "technical knowledge" to accurately determine whether property of this nature constitutes contraband.  Allen points to deposition testimony from Defendants Thomas and Dickey, who made the determination that Allen's typewriter had been altered.  These officers admit they have no technical training or background with typewriters or word processors.   (Docket Entry No. 65, at 6-7).  The defendants argue that determinations about contraband generally require a "simple observation with a low risk of error," and that allowing an inmate endless opportunities to quarrel about whether a particular item is or is not contraband will not significantly improve the odds that property might have been taken erroneously.

There is a chance that a harried or uninformed correctional officer could seize an item in error, incorrectly believing it to be contraband.  However, Allen, who does not identify the witnesses he would have called or the substance of their testimony, does not articulate what an evidentiary hearing with live witnesses would provide to correct the problem that a written grievance process could not.  The availability to inmates of the

simple and immediate two-step grievance process to air disputes is well suited to identify officers' errors and to enable the officers and inmates to join issue. The benefits of a live evidentiary hearing simply are not apparent as a rule for nuisance or non-dangerous items. These are not circumstances where the outcome of a prisoner's complaint is likely to turn on credibility determinations. Rather, the issue is whether the item is contraband or not, in Allen's case, a fact that can be ascertained from looking at the item to see if it has been altered. The defendants point out without contradiction that both Thomas and the unit warden looked at the property and made an independent determination that the items fit within the definition of contraband found in AD 3.72. Allen does not show that requiring an additional live evidentiary hearing in connection with the seizure of his contraband, or contraband generally, will minimize the risk that authorized items of property might be taken in error.

**State's interest.** — The Supreme Court has emphasized that, "[i]n the context of prison management," the state's interest "is a dominant consideration" in weighing the *Mathews v. Eldridge* factors. *Austin*, 125 S. Ct. at 2396. That is, "[t]he State's first obligation must be to ensure the safety of guards and prison personnel, the public, and the prisoners themselves." *Id.* The Supreme Court has recognized that prisons are volatile environments with heightened security concerns that demand "[u]nfettered access" to cells by prison officials so that contraband can be ferreted out to ensure institutional safety and sanitary surroundings. *Hudson v. Palmer*, 468 U.S. 517, 26-27 (1984) (rejecting the

18

argument that prison cells are protected by the Fourth Amendment from unreasonable searches and seizures in the form of random shakedowns).

Allen acknowledges that the state prison system has a high interest in confiscating dangerous contraband that poses a risk to inmates and staff. Allen argues, however, that the state's interest is not as great where, as here, the alleged property involved non-dangerous contraband. Allen's argument overlooks the fact that the policy governing inmate personal property is designed not solely to prevent prisoners from possessing dangerous homemade weapons and the like, but also to guard against the possession of property which can pose a hazard in other, less obvious ways. In that respect, the express objective of AD 3.72 extends to non-dangerous items for the purpose of "ensuring a safe environment for staff and offenders by reducing fire hazards, safety risks, and sanitation problems related to offender property." (Docket Entry No. 65, Exhibit D [AD 3.72], *Guidelines for TDCJ Offender Personal Property and Confiscation and Disposal of Contraband*).

The defendants also point to the administrative burden inherent in requiring an evidentiary hearing whenever any item of property is seized in furtherance of the safety and sanitation interests promoted by AD 3.72 would be "overwhelming."[8] Allen cites no legal authority that a formal evidentiary hearing is required every time a piece of personal property belonging to an inmate is taken by a prison official. Indeed, recent case law from

---

[8]     The defendants contend that requiring an evidentiary hearing in connection with seizure the of contraband in the huge TDCJ system would be administratively burdensome in the extreme.

the Supreme Court suggests that the opposite is true.  Noting that inmates' constitutional due process rights do not require a formal hearing in every instance, even when a significant liberty interest is at stake, such as an inmate's confinement for a year at a time in a "Supermax" prison facility featuring the most severe conditions, the Supreme Court upheld a three-step procedure that does not include an evidentiary hearing of the sort sought by Allen.[9]  *See Austin*, 125 S. Ct. at 2397 (commenting that, "[w]here the inquiry draws more on the experience of prison administrators, and where the State's interest implicates the safety of other inmates and prison personnel," informal, nonadversary procedures may be are appropriate) (citations omitted); *see also Sandin v. Connor*, 515 U.S. 472, 482-83 (1995) ("[F]ederal courts ought to afford appropriate deference and flexibility to state officials trying to manage a volatile environment . . . .  Such flexibility is especially warranted in the fine-tuning of the ordinary incidents of prison life . . . .").  The state prison system and the defendants have significant interests in relying on AD 3.72 to seize contraband, such as altered items like Allen's radio and typewriter, without providing a formal evidentiary hearing.  Requiring an evidentiary hearing for inmates in connection with the seizure of every item of nuisance contraband would defeat the state's interest in the easy administration of rules governing inmate property for the purpose of furthering institutional

---

[9]      According to the policy at issue in *Austin*, inmates identified for placement in a Supermax facility are provided with written notice of the reasons for this proposed classification and the option to appear in person or present a written statement at a hearing before the Classification Committee, but they are not allowed to call witnesses.  *See Austin*, 125 S. Ct. at 2390.

safety and sanitation.[10]  Moreover, any probable value of requiring such an evidentiary hearing does not clearly outweigh what could be a significant cost in terms of scarce resources that would presumably be diverted from other prison programs designed to benefit the inmate population as a whole.

**Conclusion on Due Process.** — The record demonstrates that despite the untimeliness of the receipt given to Allen and the lack of a formal hearing, he was afforded ample notice and sufficient opportunity to object to the confiscation of his property.  He complained informally to Thomas in person and formally by pursuing the two-step prison grievance process.  After weighing all of the factors found in *Mathews v. Eldridge*, the Court concludes that Allen fails to raise a genuine issue of material fact showing that due process mandates a formal evidentiary hearing whenever a prison official seizes from an inmate an item of personal property that the official has reason to believe is contraband. The defendants' motion for summary judgment on Allen's due process claim is granted.

**B.    Retaliation**

Noting that his typewriter was confiscated just one day after the TDCJ mailroom received Allen's letters to various Texas newspapers, Allen alleges that the defendants must have confiscated his property in retaliation for exercising his First Amendment rights.  The defendants argue that Allen cannot make this claim because he has no evidence that any of

---

[10]    Prison administrators have an interest in the strict application of rules prohibiting altered items without the need for making artificial distinctions, which can frustrate a rule's easy application.

the defendants knew about the letters or that they otherwise had any intent to retaliate as a result of his media correspondence.

"To prevail on a claim of retaliation, a prisoner must establish (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation." *McDonald v. Steward*, 132 F.3d 225, 231 (5th Cir. 1998). "Causation requires a showing that 'but for the retaliatory motive the complained of incident . . . would not have occurred.'" *Id.* (quoting *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir.), *cert. denied*, 522 U.S. 995 (1997) (citation omitted)); *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995), *cert. denied*, 516 U.S. 1084 (1996). Personal beliefs and conclusional allegations are not sufficient to avoid dismissal of a retaliation claim. *Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir. 1999). "The inmate must produce direct evidence of motivation or, the more probable scenario, 'allege a chronology of events from which retaliation may plausibly be inferred.'" *Id.* (quotation omitted).

In the non-prisoner context, a *prima facie* case for retaliation requires the plaintiff to demonstrate: (1) he engaged in a protected activity; (2) an adverse employment action occurred; and (3) a causal link exists between the protected activity and adverse employment action. *Fabela v. Socorro Indep. School Dist.*, 329 F.3d 409, 414 (5th Cir. 2003) (citing *Evans v. City of Houston*, 246 F.3d 344 (5th Cir. 2001)); *Banks v. East Baton Rouge Parish School Bd.*, 320 F.3d 570, 575 (5th Cir. 2003); *Long v. Eastfield College*, 88 F.3d 300, 304 (5th Cir. 1996) (quoting *McMillan v. Rust College, Inc.*, 710 F.2d 1112,

1116 (5th Cir. 1983)).

Regardless which of the two formulations is employed, the question presented on Allen's retaliation claim is whether he has produced evidence sufficient to support a verdict in his favor on the causation element.  *See Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001) ("A dispute over a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.") (quoting *Smith v. Brenoettsky*, 158 F.3d 908, 911 (5th Cir. 1998)); *see also Quorum Health Resources, L.L.C. v. Maverick County Hosp. District*, 308 F.3d 451, 458 (5th Cir. 2002).  The Court concludes that Allen has not met this burden.

Allen concedes that during discovery all of the defendants denied under oath having any specific knowledge about Allen's letters prior to the time that his property was confiscated.[11]  Allen also took depositions of the mailroom employees at the Wynne Unit, each of whom reportedly denied having knowledge about Allen's correspondence with the media or communicating facts about Allen's letters to the defendants.  Allen admits that he has no direct evidence that retaliation was the reason behind the defendants' motivation to seize his property.   Allen maintains, however, that he has sufficiently established a chronology from which retaliation could be inferred.  Allen simply points to mail logs from the Wynne Unit showing that Allen sent three letters to the media, which were mailed on

---

[11]     Thomas testified at his deposition that he did not remember the specific circumstances that lead to the search, but that he may have done so after he received a tip from another inmate that Thomas was in possession of an "altered" typewriter.  (Docket Entry No. 67, Exhibit 1, *Deposition Excerpt*).  He added that such information would not have been necessary to initiate a search, because "shakedowns" are regularly ordered to increase unit security.  (*Id.*).

November 13, 2000 (Docket Entry No. 65, Exhibit B), and the fact that his property was confiscated by the defendants on that same day.  Allen argues that this circumstantial evidence creates an inference that but for retaliation his property would not have been taken.

The Court is unpersuaded.  There is no evidence that Allen expressed orally to the defendants or in the letters or elsewhere in writings known to the defendants complaints about the defendants or the prison system.  In fact, the letters do not reference any of the defendants personally or criticize the Wynne Unit, its personnel, or the conditions of confinement at that facility.  Nothing about Allen's views in the letters or in general (prior to the seizure of his belongings) is of the sort that ordinarily might engender retaliatory animus on the part of a correctional officer.  Instead, the letters mailed by Allen complain about an interpretation of a statute governing the eligibility of Texas inmates serving life sentences for early release onto the form of parole known as mandatory supervision.  (*See* Docket Entry No. 1, Exhibit 1, *Letter to Leona Allen of the Dallas Morning News*).  Both the Texas Court of Criminal Appeals and the United States Court of Appeals for the Fifth Circuit have concluded that Texas inmates sentenced to life in prison are not eligible for mandatory supervision.  *See Arnold v. Cockrell*, 306 F.3d 277 (5th Cir. 2002); *Ex parte Franks*, 71 S.W.3d 327 (Tex. Crim. App. 2001).  Allen does not articulate what possible motive a correctional officer would have to retaliate against an inmate for complaining to the media about Texas law governing the eligibility for release to parole.

More importantly, Allen has presented no evidence that the defendants had any

knowledge of the letters' existence, the addressees, or the letters' content before the defendants seized his property.  Indeed, there is no evidence the defendants delivered the mail to the mailroom, or spoke to the mailroom staff on November 12 or 13 (or in general) when the mailroom could have known of the correspondence.  Allen does not point to any evidence showing that he ever had trouble with any of the individual defendants previously, that he had a reputation at the prison as a chronic complainer, or that his letter-writing activities had otherwise invoked the ire of prison officials.  Absent some showing that the defendants somehow knew of the letters, that they had somehow been the target of Allen's grievances, or that they knew of Allen's propensity for mailing letters critical of TDCJ and its policies, there is no evidence of any causal link between confiscation of Allen's property and the exercise of a constitutional right.  *See McDonald v. Steward*, 132 F.3d 225, 231 (5th Cir. 1998) (finding no evidence of retaliatory intent).  In other words, there is no proof – direct or indirect – that the defendants formed the requisite retaliatory intent.  *See id.*; *cf. Hart v. Hairston*, 343 F.3d 762, 764 (5th Cir. 2003) (noting the "direct link" between the prisoner's complaints about a guard, and the alleged retaliatory adverse act by that guard).  In summary, Allen's proof of the occurrence of the two identified events on the same date is at most a "scintilla" of evidence in his favor, and is insufficient to support a verdict at trial.[12]

---

[12]    Allen insists that his typewriter was not, in fact, altered and did not meet the definition of contraband.  He argues that, because his typewriter was not contraband, this is further proof that his property was confiscated for retaliatory reasons.  Allen reports that the property confiscated from his cell on November 13, 2000, was destroyed by TDCJ on March 1, 2004.

(continued...)

Allen's personal belief that the confiscation of his property must have been retaliation for his letters to the media is not sufficient to overcome the defendants' summary judgment motion for dismissal of the claim. *See Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995), *cert. denied*, 516 U.S. 1084 (1996). Allen has therefore failed raise a genuine issue of material fact on the issue of intent or motivation. The defendants' motion for summary judgment on his retaliation claim is granted.

## C.   Compensatory Damages

Although the defendants do not raise this issue in their summary judgment motion, the Court notes that Allen cannot recover compensatory damages in this case. The Fifth Circuit has recently held that compensatory damages are barred by 42 U.S.C. § 1997e(e)

---

[12](...continued)

(Docket Entry No. 65, Exhibit C [Form AD-92], *TDCJ Confiscation and Disposition of Contraband*). Allen argues that the destruction of this evidence will make it impossible to prove his contention that the property was not, in fact, altered to fit within the definition of contraband found in AD 3.72. Accusing the defendants of "spoliation" of evidence, Allen maintains that he is entitled to an "adverse inference" that the property was not contraband. The Court disagrees. No spoliation or adverse inference against the defendants is warranted and the destruction of the property is not evidence of retaliation. At the close of his Step 2 grievance appeal, on May 4, 2001, Allen was instructed by prison officials to contact the property officer to make arrangements for the disposition of his property. (Docket Entry No. 1, Exhibit 3, *Step 2 Grievance*). At that time, Allen was given notice that he needed to make such arrangements or else "the items will be disposed of." (*Id.*) Allen received additional notice on March 1, 2002, that he had seven days to claim ownership of the seized property and to designate a method of disposal. (Docket Entry No. 65, Exhibit C [Form AD-92], *TDCJ Confiscation and Disposition of Contraband Form*). The property was not destroyed until more than two years later. Allen was partially responsible for the property's destruction and he provides no explanation why he failed to heed the prison officials' two warnings to make arrangement for the property to be sent away or picked up.

Nevertheless, this issue is academic. The Court has construed disputed facts in the light most favorable to non-movant and thus assumes for summary judgment purposes that the typewriter was in fact not altered.

in a case such as this one where there is no showing of any physical injury.[13] *Geiger v. Jowers*, 404 F.3d 371, 374-75 (5th Cir. 2005) ("To the extent [that the prisoner] seeks compensation for injuries alleged to have resulted from a First Amendment violation, the district court properly determined that his claim is barred by the physical injury requirement of § 1997e(e)."). Allen's claim for compensatory damages lacks an arguable basis in law and will be dismissed for failure to state a claim upon which relief can be granted. 28 U.S.C. § 1915(e)(2)(B); *Geiger*, 404 F.3d at 374.

### D.    Qualified Immunity

The defendants argue they are entitled to qualified immunity on all of Allen's claims. Public officials acting within the scope of their authority generally are shielded from civil liability by the doctrine of qualified immunity. *See Harlow v. Fitzgerald*, 457 U.S. 800 (1982). Officials sued in their individual capacities are protected by qualified immunity unless the alleged act violates a constitutional right that was clearly established at the time. *Sanchez v. Swyden*, 139 F.3d 464, 466-67 (5th Cir. 1998). "The doctrine of qualified immunity serves to shield a government official from civil liability for damages based upon the performance of discretionary functions." *Cozzo v. Tangipahoa Parish Council – President Gov't*, 279 F.3d 273, 284 (5th Cir. 2002) (quoting *Thompson v. Upshur Cty.*, 245 F.3d 447, 456 (5th Cir. 2001)). "The Supreme Court has characterized the doctrine as protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Id.*

---

[13]    42 U.S.C. § 1997e(e) provides as follows: "No federal civil action may be brought by a prisoner confined to a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury."

(quoting *Malley v. Briggs,* 475 U.S. 335, 341 (1986)).

In assessing qualified immunity, the Court must conduct a bifurcated analysis. *See, e.g., Collins v. Ainsworth,* 382 F.3d 529, 537 (5th Cir. 2004).  The first step has two parts: First, the Court must decide whether the plaintiff alleged a constitutional violation, and the violation is of a clearly established constitutional right.  *Id.*; *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  A right is "clearly established" if its contours are "sufficiently clear that a reasonable official would understand that what he is doing violates that right."  *Anderson v. Creighton,* 483 U.S. 635, 640 (1987); *see also Collins*, 382 F.3d at 537.  If the defendants' actions violated a clearly established constitutional right, the final prong of the qualified immunity analysis asks whether qualified immunity is appropriate, nevertheless, because the defendants' "actions were objectively reasonable" in light of "law which was clearly established at the time of the disputed action." *Collins,* 382 F.3d at 537.

For reasons explained in the preceding sections, Allen has not produced evidence to establish that the defendants' conduct violated his constitutional right to procedural due process or against retaliation for exercising his First Amendment rights.  Thus, Allen has not raised a genuine issue of material fact on whether the defendants committed a constitutional violation, the first prong of the qualified immunity analysis.  The Supreme Court has held that if the defendants' conduct did not violate a constitutional right, then the defendant is entitled to qualified immunity and it is unnecessary to consider whether the asserted right was "clearly established."  *Chavez v. Martinez*, 538 U.S. 760, 766 (2003); *see also Martinez v. Texas Dep't of Criminal Justice*, 300 F.3d 567, 577 (5th Cir. 2002)

(finding that, because plaintiff's First Amendment retaliation claim failed, the defendants were entitled to qualified immunity because plaintiff failed to establish a constitutional violation under the first prong of the qualified immunity analysis).

Even if Allen could show there was a constitutional violation, the defendants argue that they are entitled to qualified immunity from Allen's procedural due process claim because he fails to establish that clearly established law required a formal evidentiary hearing before his property was confiscated as contraband or to show that he did not otherwise receive the minimum amount of process required by the Constitution: notice and an opportunity to be heard. The defendants argue further that they are entitled to qualified immunity from Allen's retaliation claim because his allegations and proof, even if taken as true, do not demonstrate that the confiscation of his property was objectively unreasonable at the time based on what the defendants knew.

If a reasonable official would know that his actions were in violation of the plaintiff's clearly established constitutional right, then the official's conduct was not objectively reasonable. *Vera v. Tue*, 73 F.3d 604, 607 (5th Cir. 1996). A defendant's acts are held to be objectively reasonable unless *all* reasonable officials in the defendant's circumstances would have then known that the defendant's conduct violated" the plaintiff's asserted constitutional right. *Thompson,* 245 F.3d at 457 (citations omitted) (emphasis in original). The subjective belief of the plaintiff as to the reasonableness of the officers' actions is irrelevant to the qualified immunity issue. *Pfannstiel v. City of Marion*, 918 F.2d 1178, 1184 (5th Cir. 1990). "[E]ven an officer who subjectively intends to act unreasonably is

entitled to immunity if his actions are objectively reasonable." *Id.* at 1187.  Therefore, "subjective intent, motive, or even outright animus are irrelevant in a determination of qualified immunity . . . just as an officer's good intent is irrelevant when he contravenes settled law." *Mendenhall v. Riser*, 213 F.3d 226, 231 (5th Cir. 2000).

At the summary judgment stage of a § 1983 action, a defendant asserting qualified immunity is not required to establish the defense beyond peradventure, as he would have to do for other affirmative defenses.  "The moving party is not required to put forth evidence to meet its summary judgment burden for a claim of immunity.  It is sufficient that the movant in good faith pleads that it is entitled to absolute or qualified immunity.  Once the [movant] *asserts* this affirmative defense, the burden *shifts* to the plaintiff to rebut it." *Cousin v. Small*, 325 F. 3d 627, 632 (5th Cir. 2003) (citations omitted) (emphasis in original).  The plaintiff bears the burden of negating the defendants' claim of qualified immunity. *See Bazan v. Hidalgo Cty.*, 246 F.3d 481, 489-90 (5th Cir. 2001); *Foster v. City of Lake Jackson*, 28 F.3d 425, 428 (5th Cir. 1994); *Salas v. Carpenter*, 980 F.2d 299, 305-06 (5th Cir. 1992).

To avoid summary judgment, a plaintiff must present evidence to raise a fact issue "material to the resolution of the questions whether the defendants acted in an objectively reasonable manner in view of the existing law *and facts available to them*." *Lampkin v. City of Nacogdoches*, 7 F.3d 430, 435 (5th Cir. 1993), *cert. denied*, 511 U.S. 1019 (1994) (emphasis added).  Allen has not met his summary judgment burden to demonstrate a genuine fact issue that the defendants' conduct was objectively unreasonable.

The evidence is uncontroverted that Thomas received a "tip" from an informant that Allen was in possession of property that had been altered, making that property contraband under the definition found in AD 3.72. Allen's bare assertion that his property was not altered is not enough to carry his burden to defeat the qualified immunity defense, and does not suffice to subject government officials to the costs of a trial. *See Al-Ra'id v. Ingle*, 69 F.3d 28, 33 (5th Cir. 1995). Allen has not raised a genuine issue of fact showing that a reasonable officer could not have believed that the confiscated items were not contraband as defined by AD 3.72 and its prohibition of altered property. In addition, defendants Dickey and Major acted, if at all, at Thomas' direction. There is no evidence that Dickey and Major — who were following their superior's orders in enforcing a written prison policy — acted unreasonably under the circumstances. Absent a showing that the defendants' actions violated a constitutional right that was clearly established, or that the defendants' conduct was objectively unreasonable in light of clearly established precedent, Allen fails to raise a genuine issue of material fact on whether the defendants are entitled to qualified immunity. The motion for summary judgment on this issue is granted.

## E.    Remaining State Law Conversion Claim

The defendants' motion for summary judgment does not address the pendent state law claim for conversion that Allen presents in his amended complaint. (Docket Entry No. 53, *Amended Complaint* ¶ 22). The Court dismissed Allen's state law conversion claim in the Memorandum and Order dated October 23, 2003. (Docket Entry No. 32). That decision was not challenged on appeal. *See Allen v. Thomas*, 338 F.3d 147 (5th Cir. 2004).

This claim is outside the scope of the remand order and will not be addressed.

**IV.    CONCLUSION AND ORDER**

Accordingly, based on the foregoing, the Court **ORDERS** as follows:

1.    The defendants' motion for summary judgment (Docket Entry No. 59) is

**GRANTED**.

2.    Allen's civil rights claims under 42 U.S.C. § 1983 are **DISMISSED** with

prejudice.

3.    The scheduling order in this case (Docket Entry No. 50) is **VACATED**.

4.     The order appointing counsel (Docket Entry No. 47) is **TERMINATED**.

The Clerk will provide a copy of this order to the parties.

SIGNED at Houston, Texas, on **August 26, 2005**.

Nancy F. Atlas
United States District Judge